IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANNA MARIA DE LA TORRE,

        Plaintiff,

v.                                                                                  No. CV-14-15 CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Anna Marie De La Torre's *Motion to Reverse and Remand for Rehearing, with Supporting Memorandum* (the "Motion"), filed on May 30, 2014, (Doc. 18); *Defendant's Response to Plaintiff's Motion to Reverse and Remand the Administrative Agency's Decision* ("Response"), filed on July 28, 2014, (Doc. 19); and *Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Reverse and Remand for Rehearing* ("Reply"), filed on August 14, 2014. (Doc. 20).

On April 13, 2010, Ms. De La Torre filed an application for supplemental security income with the Social Security Administration, alleging disability beginning on the filing date. (Administrative Record ("AR") 11, 121–22, 146). Her application was denied on October 12, 2010, (AR 54, 56–59), and upon reconsideration on March 3, 2011. (AR 55, 67–70). Ms. De La Torre filed her request for a hearing on May 2, 2011, (AR 71–73); a hearing was held on May 3, 2012, before Administrative Law Judge ("ALJ") Donna Montano. (AR 27–53). Ms. De La Torre and Thomas A. Greiner, an impartial vocational expert, testified at the hearing. *Id.*

The ALJ issued her opinion on August 17, 2012, and determined that Ms. De La

Torre was not disabled under 20 C.F.R. §416.920(g). (AR 11–21). Ms. De La Torre filed an application for review with the Appeals Council, which was summarily denied on November 4, 2013, (AR 1–4), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. De La Torre complains that the ALJ committed reversible, legal error by: (1) making a residual functional capacity finding unsupported by substantial evidence and the law by failing to properly evaluate the evidence of her fibromyalgia; and (2) impermissibly adopting the vocational expert's testimony.

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ rendered a legally-erroneous residual functional capacity finding unsupported by substantial evidence, the Court finds that the Motion shall be **GRANTED** and the case shall be **REMANDED** for further proceedings.

   I.   Standard of Review

The standard of review in a Social Security appeal is whether the final decision of the Commissioner of the Social Security Administration is supported by substantial evidence and the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004);

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

national economy, in light of his residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

### III.     Background

Ms. De La Torre applied for disability benefits alleging that she was disabled due to a heart condition, fibromyalgia, high blood pressure, anemia, elbow problems, and depression. (AR 151).

At step one, the ALJ determined that Ms. De La Torre had not engaged in substantial gainful activity since April 13, 2010. (AR 13). At step two, the ALJ concluded that Ms. De La Torre was severely impaired with fibromyalgia, depression, tennis elbow, iron deficiency anemia, gastritis, hypertension, obesity, hepatitis C, and degenerative changes of the cervical and lumbar spine. *Id.* At step three, the ALJ concluded that none of Ms. De La Torre's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 416.920(d), 416.925, and 416.926. (AR 13–15).

The ALJ proceeded to step four, and first made an RFC finding that Ms. De La Torre could perform light work, as defined in 20 C.F.R. § 416.967(a), except that she was limited in her ability to reach in all directions, including overhead, but could frequently do repetitive reaching on her right. *Id.* The ALJ also found that she was able to do work requiring her to understand, remember, and carry out simple, repetitive tasks, make decisions and concentrate for up to two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting. *Id.* The ALJ decided that Ms. De La Torre was precluded from doing any of her past relevant work in light of the RFC finding. (AR 19–20).

At step five, the ALJ inquired whether Ms. De La Torre would be able to perform any other work existing in significant numbers in the national economy. (AR 20). The ALJ noted that Ms. De La Torre was 44 years old on the alleged disability onset date, and classified as a "younger individual" in accordance with the Regulations. *Id.* The ALJ also determined that Ms. De La Torre had at least a high school education and English-language skills. *Id.*

The vocational expert testified at the hearing that an individual with Ms. De La Torre's same age, education, work experience, and RFC could perform the jobs of call-out operator and food-and-beverage order clerk. (AR 47). The vocational expert stated that those jobs existed in significant numbers in the national economy. *Id.* After finding the vocational expert's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted his testimony. (AR 21).

The ALJ concluded that because Ms. De La Torre was capable of performing work existing in significant numbers in the national economy, she was not disabled pursuant to 20 C.F.R. § 416.920(g). (AR 21).

## IV.    Analysis

Ms. De La Torre contends that the ALJ committed error by formulating an RFC determination unsupported by substantial evidence and the law, because the ALJ failed to properly evaluate her fibromyalgia.[1]  She also argues the ALJ committed reversible error at step five because the vocational expert did not account for all of her limitations, and the ALJ failed to reconcile conflicts between the vocational expert's testimony and

---

[1]  Fibromyalgia causes long-term but variable levels of muscle and joint pain, stiffness and fatigue. *Moore v. Barnhart*, No. 03-3253, 114 Fed. Appx. 983, 991 (10th Cir. Nov. 19, 2004) (unpublished) (quotation omitted).

5

the Dictionary of Titles.

The Commissioner responds that the ALJ's RFC finding is supported by substantial evidence and is not legally erroneous. The Commissioner also argues that the vocational expert's testimony supports the ultimate finding of disability, and asks the Court to affirm the final decision denying disability benefits.

### A.    *Ms. De La Torre's Challenges to the RFC Finding*

The ALJ found at step two that Ms. De La Torre's fibromyalgia was a severe impairment, but that it did not significantly impair her functioning. Ms. De La Torre argues the ALJ did not consider all of the evidence of her fibromyalgia when the ALJ determined her RFC. She alleges that the ALJ fundamentally misunderstood the nature of fibromyalgia.

Ms. De La Torre contends that certain medical opinions in the record assign more restrictive functional limitations due to her fibromyalgia than the limitations the ALJ found, and that the ALJ failed to properly evaluate these opinions. She further argues that the ALJ erred by failing to explain why an impairment found to be severe at step two was determined to be insignificant in later stages of the sequential analysis. *See Timmons v. Barnhart*, No. 04-7007, 118 Fed. Appx. 349, 353 (10th Cir. Sept. 9, 2004) (unpublished) (holding that the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."). The Commissioner responds that the ALJ did not commit legal error because she properly considered the medical evidence and weighed the medical opinions concerning Ms. De La Torre's fibromyalgia.

### 1.    *The ALJ's RFC Finding*

At step four, the ALJ considered Ms. De La Torre's impairments and their effects

on her functioning, and then made an RFC finding. The RFC finding is a function-by-function assessment, based on how the claimant's functional physical and mental limitations, resulting from her impairments, affect her ability to work. *See* 20 C.F.R. § 416.945(a)(1); *see also* Social Security Rulings ("SSR") 96-8p, 1996 WL 374184, *1, 3 (July 2, 1996). The RFC represents the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. *Id.* at *7.

The RFC is based on all relevant evidence in the record, including information about the individual's symptoms, reports of daily activities, lay evidence, medical history, medical signs and laboratory findings, and any medical source statements submitted by a treating or other acceptable medical source. 96-8p, 1996 WL 374184 at *5, 7. The ALJ considers and evaluates the claimant's statements of her subjective complaints and descriptions and observations of her functional limitations, including pain and fatigue. *See* 20 C.F.R. §§ 416.929, 416.945(e); *see also* SSR 12-2p, 2012 WL 3104869, *13–14 (July 25, 2012); *see generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996).

The ALJ also takes into account any statements about what the claimant can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. *See* 20 C.F.R. § 416.913. Additional evidence from medical sources that are not "acceptable medical sources," and information from nonmedical sources, may also be used to evaluate the severity and functional effects of fibromyalgia. SSR 12-2p, 2012 WL 3104869 at *4.

In this case, the ALJ found Ms. De La Torre to be capable of doing a restricted

range of light work. Light work is work which requires lifting or carrying no more than 20 pounds at a time frequently,[2] and lifting or carrying no more than 10 pounds occasionally.[3] SSR 83-10, 1983 WL 31251 at *5. It also requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. *Id.* at *6. Sitting may occur intermittently during the remaining time, with some pushing and pulling of arm or leg controls. *Id.* at *5. The ALJ additionally found that Ms. De La Torre was limited in her ability to reach in all directions, including overhead, but that she could do frequent repetitive reaching on her right.

### 2. Analysis of Nurse Carver's Treatment Notes and Opinions

The ALJ considered the treatment notes and medical opinions of Angelina Carver, Registered Nurse and Family Nurse Practitioner, in making the RFC finding, but ultimately assigned them little weight. Ms. De La Torre argues that Nurse Carver's opinions were improperly rejected, but the Commissioner contends that the ALJ permissibly discounted them pursuant to the Regulations.

Nurse Carver was Ms. De La Torre's treating health care professional at the Mesilla Valley Clinic as early as 2003. (AR 326–411). Nurse Carver completed a physical RFC assessment form, which was submitted to the ALJ on May 22, 2012, several weeks after the hearing. (AR 588–95). Nurse Carver wrote that Ms. De La Torre's primary diagnosis was Sjorgren's Syndrome. (AR 588). She assessed that Ms. De La Torre could only occasionally and frequently lift or carry a maximum of 10 pounds, stand for less than two hours in an eight-hour workday, and sit for less than six hours in an

---

[2] Frequently "means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, *6 (Jan. 1, 1983).
[3] "Occasionally means occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251 at *5.

eight-hour workday, and was limited in her ability to push and pull in both the upper and lower extremities. (AR 589). She explained that Ms. De La Torre had myalgia, and that while she has the ability to do simple activities, she fatigues easily due to that impairment.[4] (AR 589, 591).

The ALJ's RFC finding and Nurse Carver's RFC assessment differ in the functional areas of carrying, standing, walking, pushing, and pulling, and the ALJ accorded little weight to Nurse Carver's opinions about Ms. De La Torre's primary diagnosis and limitations. (AR 18). The ALJ noted that, while Nurse Carver's opinions could not be used to establish that Ms. De La Torre suffered from fibromyalgia, they could be considered to show the severity of that impairment. 20 C.F.R. § 416.913(a), (d). She concluded that the most remarkable pain findings Nurse Carver ever observed on examination were complaints of tenderness in the neck and back on January 20, 2011, which could not support the assessed limitations that Nurse Carver found in the areas of lifting and sitting. (AR 19, 516–17). She found Nurse Carver's RFC assessment to be unsupported by treatment records for that reason alone. (AR 19). The ALJ further explained that Nurse Carver had listed fibromyalgia as her primary diagnosis, but then crossed it out, writing Sjogren's Syndrome instead. (AR 18). She reasoned that Nurse Carver must not have been sure of Ms. De La Torre's diagnosis, and considered that factor in discounting Nurse Carver's opinions. (AR 19).

 3. *Weighing the Opinions of "Other Sources"*

Opinions from non-acceptable medical sources, such as nurse practitioners, are

---

[4] 'Myalgia' refers to chronic muscle pain; fibromyalgia and myofascial pain syndrome are the two most commonly diagnosed types of non-inflammatory myalgia. Robert D. Gerwin, *A Review of Myofascial Pain and Fibromyalgia—Factors That Promote Their Persistence*, ACCUPUNCTURE IN MEDICINE (Sept. 2005), *http://aim.bmj.com/content/23/3/121.full.pdf+html?sid=61ffb60a-8f8e-48ff-9e9a-b65756e2999e*.

important in determining the severity and limiting effects of a properly-diagnosed condition. SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006). When considering what weight, if any, to afford a medical opinion from such a source, the ALJ should consider the same six factors typically used to evaluate the weight of an acceptable medical source's opinion. *Id.* at *4. These factors include: (i) length of the treatment relationship and the frequency of examination; (ii) nature and extent of the treatment relationship; (iii) supportability of the opinion by reference to relevant evidence; (iv) how well the source explains the opinion; (v) the source's medical specialization; and (vi) any other factor which tends to support or refute the opinion. 20 C.F.R. § 416.927(d); SSR 06-03p, 2006 WL 2329939 at *2–3.

The ALJ should explain the weight given to opinions from these other sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning. SSR 06-03p, 2006 WL 2329939 at *6; *see also Bowman v. Astrue*, 511 F.3d 1270, 1274 (10th Cir. 2008). This duty is commensurate with the ALJ's more generalized duty to "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

   *4.   Application to Nurse Carver's Opinions*

The ALJ considered Nurse Carver's assessment of functional limitations in lifting, carrying, standing, walking, sitting, pushing, and pulling, but ultimately rejected her opinions by affording them little weight. The ALJ explained that Nurse Carver's treatment records did not support the limitations she ascribed, and that Nurse Carver was unsure of Ms. De La Torre's primary diagnosis. The Court must determine whether the ALJ

properly explained and supported her decision to discount Ms. Carver's medical opinions with substantial evidence.

First, the ALJ found Nurse Carver's RFC assessment to be inconsistent with her own treatment records.[5] She notes that Nurse Carver's most remarkable finding of pain on examination was based on Ms. De La Torre's complaints of neck and back tenderness in January, 2011. The ALJ concluded that Ms. De La Torre's complaints could not support the limitations that Nurse Carver ascribed in the areas of lifting or sitting.[6]

However, Nurse Carver explained that she assessed exertional limitations due to Ms. De La Torre's fatigue, not because of pain or neck and back tenderness. The Administration's Rulings advise that fatigue, a symptom associated with fibromyalgia, may result in exertional limitations and should be considered in making the RFC finding. SSR 12-2p, 2012 WL 3104869 at *6. The ALJ failed to resolve or explain how the lack of evidence concerning Ms. De La Torre's alleged pain was a proper reason to discount Nurse Carver's opinions based primarily on Ms. De La Torre's fatigue.

Additionally, the ALJ failed to explain how Nurse Carver's treatment records were inconsistent with the functional limitations that she assigned in the areas of carrying, standing, walking, pushing, or pulling. As stated above, Nurse Carver's opinions and the ALJ's findings differ as to all of those functional areas. Because the ALJ did not address and resolve those inconsistencies in the decision, the Court cannot find that she satisfied

---

[5] The Commissioner argues that the ALJ also found Nurse Carver's opinion to be unsupported by the medical evidence in the record as a whole, (Doc. 19 at 14), but the Court has reviewed the ALJ's decision and cannot agree that the ALJ made that finding.
[6] Confusingly, both Nurse Carver and the ALJ assessed consistent limitations in the area of sitting, even though the ALJ stated that she discounted the ALJ's assessed limitations in that area.

her burden of pointing to specific evidence to support her findings.

The Commissioner contends that the ALJ was correct when she determined that Nurse Carver's treatment notes and opinions were inconsistent because Nurse Carver's treatment notes document only intermittent complaints of pain in certain joints, and not global, ongoing complaints of pain and swelling. To be disabled from fibromyalgia, a claimant is required to provide sufficient objective evidence that her fibromyalgia limits her ability to work. SSR 12-2p, 2012 WL 3104869 at *2. Therefore, the Court will also analyze Nurse Carver's treatment record for evidence of fibromyalgia-related symptoms.

On October 14, 2003, Nurse Carver noted in her treatment record: "ar[th]ralgias: had gone to Dr. Snyder and he prescribed meds for Fibromyalgia."[7] (AR 390). Then on July 12, 2006, Nurse Carver wrote that Ms. De La Torre had a history of fibromyalgia, and was being treated by Dr. Snyder for the condition.[8] (AR 356, 358).

On July 27, 2009, Nurse Carver wrote that Ms. De La Torre's fibromyalgia had been monitored by Dr. Snyder, but that she stopped taking her medications because of changes in her health insurance benefits. *Id.* Ms. De La Torre reported that her pain was worsening and that she needed to re-start her medication. *Id.* She complained of swollen arms, pain in her wrists, elbow, and right knee. *Id.* A couple of weeks later she presented at the emergency room with complaints of fatigue and high blood pressure. (AR 347).

In September, 2009, Nurse Carver treated Ms. De La Torre for fatigue and assessed Ms. De La Torre with myalgia/myofascitis. (AR 343–44, 345). She also complained of elbow pain, which revealed tennis elbow; she subsequently received

---

[7] Arthralgia is an alternative name for joint pain. Nat'l Insts. of Health, *Joint Pain*, MEDLINEPLUS (April 14, 2014), http://www.nlm.nih.gov/medlineplus/ency/article/003261.htm.
[8] Reference to Dr. Synder is made throughout Nurse Carver's treatment notes, but his own treatment notes do not appear in the record before the Court.

steroid injections in the right elbow, which gave her temporary relief. (AR 322–24, 341–42, 437). Ms. De La Torre continued to see Nurse Carver for help with her fatigue and pain in July and November of 2010. (AR 333–34, 329–30).

Nurse Carver evaluated Ms. De La Torre on January 20, 2011, to treat her for a fall she had several weeks prior. She complained that she was experiencing numbness in her hands. (AR 516–17). X-rays subsequently revealed some degenerative changes of her spine. (AR 514–15). On May 16, 2011, Ms. De La Torre reported myalgia, muscle twitching, and tightness. (AR 509). In October of that year she was examined by Nurse Carver for tiredness, pain, swollen legs, chest tightness, and forgetfulness. (AR 557–58).

The Court has reviewed all of Nurse Carver's treatment records from the relevant time period. The Rulings instruct the adjudicator to be mindful that the symptoms of fibromyalgia can "wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3014869 at *17. Nurse Carver's treatment record reveals that Ms. De La Torre's regular complaints of chronic fatigue and pain were consistent with the waxing and waning nature of fibromyalgia symptoms. Therefore, the Court finds that substantial evidence does not support the ALJ's finding that Nurse Carver's treatment notes were inconsistent with her RFC findings.

The ALJ also discounted Nurse Carver's opinions because she was unsure of Ms. De La Torre's diagnosis. Nurse Carver initially wrote fibromyalgia as the primary diagnosis on the RFC assessment form, but then crossed it out and wrote in a different diagnosis. The ALJ determined that this evidence, on its own, demonstrated that Nurse Carver was unsure of Ms. De La Torre's diagnosis. There is no indication that the ALJ re-contacted Nurse Carver to clarify or confirm whether the typographical error was the

result of indecisiveness. Whether Nurse Carver was in fact unsure of Ms. De La Torre's diagnosis is not part of the record, and the Court must conclude that the ALJ made an improper inference. Substantial evidence does not support the ALJ's conclusion that Nurse Carver was unsure of Ms. De La Torre's diagnosis, and therefore the reason was not a proper basis for discounting her opinion.

The ALJ found that Nurse Carver's treatment records were inconsistent with her RFC assessment for the sole reason that Nurse Carver did not document severe pain on examination of Ms. De La Torre. However, Nurse Carver assessed exertional limitations due to Ms. De La Torre's fatigue symptoms, and not pain, and therefore the ALJ's conclusion is not supported by substantial evidence. Additionally, the ALJ did not explain why she discounted the limitations Nurse Carver assessed in the areas of carrying, standing, walking, pushing, and pulling. Last, the record does not contain any probative evidence that Nurse Carver was unsure of Ms. De La Torre's primary diagnosis. For all of the foregoing reasons, the ALJ failed to adequately explain and support her reasons for rejecting Nurse Carver's opinions.

The ALJ's failure to provide a clear and substantiated reason for rejecting Nurse Carver's opinions constitutes reversible error since the record is not "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The Court is left with no guide by which to assess the ALJ's decision to reject Nurse Carver's opinions. This error was neither harmless nor of minor importance. Nurse Carver was a treating source who actually saw Ms. De La Torre on a consistent basis. Further, there are no records from medical treating or examining sources which

14

contradict Nurse Carver's findings.

On remand, the ALJ should consider Nurse Carver's opinion and RFC assessment in conjunction with the six factors established in 20 C.F.R. § 416.927 for weighing medical opinions, and provide specific reasons supported by substantial evidence for the weight she gives Nurse Carver's opinions.

### V.     Conclusion

The ALJ's RFC assessment in this case was erroneous and not based on substantial evidence, and therefore the Court will remand the case to the Commissioner for further administrative proceedings consistent with the discussion herein. The Court does not decide any other issue raised by Ms. De La Torre on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Ms. De La Torre's *Motion to Reverse and Remand for Rehearing, with Supporting Memorandum*, (Doc. 18), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE